■ In the Matter of AMERICAN CYANAMID COMPANY et al., Constituting the Industrial Energy Users Association, Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Public Service Commission imposing a differential between the rate charged for electricity to general primary service (SC-3) customers in the summer and winter. Petitioners, which together form the Industrial Energy Users Association (IEUA), operate industrial facilities in either Orange or Rockland County. Each of them purchases electric power from Orange & Rockland Utilities, Inc. (O & R), and is a member of O & R's SC-3 class of customers. On November 10, 1976, O & R filed with the Public Service Commission (commission) tariff revisions designed to produce additional revenues from the sale of electricity. The commission determined that O & R was entitled to additional electric revenues of $10,826,000, and also approved imposition of a rate differential of $2.25 per kilowatt (the differential) higher in the summer than winter on SC-3 customers. In this transferred CPLR article 78 proceeding, petitioners seek to annul only that part of the commission's order which approved the differential. Petitioners first contend that imposition of the differential is not supported by substantial evidence in the record. In support, they argue that a marginal cost study prepared by O & R was not probative of the difference in seasonal costs, and that the testimony of the two supporting witnesses was insufficient to justify the differential. We cannot agree. The purpose of the differential was to reflect in the rates the higher summer capacity O & R concededly experiences as a summer peaking utility, and to assess costs on those customers who contribute to the system peaks. Contrary to petitioners' contention, testimony by a witness for O & R and by a staff witness supported imposition of the differential. Both witnesses clearly relied on the marginal cost study which showed that O & R's marginal costs were six times higher in the summer than in the winter. Although the company's study was not used by it to design its time-of-day rates, it did provide evidence demonstrating a difference in summer and winter capacity costs. Regardless of how the difference in cost is measured (i.e., on an embedded or marginal basis), imposition of a summer/winter differential was therefore justified. Moreover, it cannot be said that the differential is without a rational basis. Although, as argued by petitioners, the differential may have no impact on O & R's plans for future capacity additions or produce short-term cost savings, it imposes the cost of facilities already built to meet peak demands upon those customers whose highest demand occurs during the summer

peak season. The commission also stated that the differential would make customers aware of the costs that they impose upon the system and in the long run lead customers to make plans to alter usage and, therefore, decrease the need for additional capacity over the long term. Resolution of such considerations is left to the commission's expertise and judgment *(Matter of New York State Council of Retail Merchants v Public Serv. Comm. of State of N. Y.,* 45 NY2d 661, 673), and on the record before us petitioners have not shown that the differential lacks a rational basis. Petitioners also urge that the commission is estopped from imposing the winter/summer differential on the grounds of *res judicata* because the commission decided not to impose the differential on SC-3 customers in an earlier proceeding. We disagree. As explained in *New Castle County Airport Comm. v Civil Aeronautics Bd.* (371 F2d 733, 735, cert den 387 US 930): "An administrative agency concerned with furtherance of the public interest is not bound to rigid adherence to precedent. It may switch rather than fight the lessons of experience. An agency reversing its course should supply an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the need for adherence to standards". Here, experience with the demand ratchet favored by petitioners demonstrated to the commission that it did force customers whose load levels were highest in the summer to share responsibility for peak capacity costs, but did not affect customers with a uniform load level in both summer and winter. The commission, therefore, decided to use the summer/winter rate differential, rather than "fight the lessons of experience". Accordingly, the *res judicata* argument is without merit. Petitioners' final contention that the commission's imposition of the differential on the SC-3 class constituted an unlawful interclass discrimination lacks factual support in the record. SC-2 customers, the only other classification to be demand metered, are subjected to a summer/winter demand differential, except for some 800 customers who are not demand metered. In *Retail Merchants (supra,* p 669), the Court of Appeals found "that there is a rational basis both for the determination that introduction of the newly designed rate structure should proceed on a step-by-step basis rather than across the board at the outset, and for the conclusion that the first step classification proposed by LILCO was reasonable in the circuitances". Since the SC-2 classification was subject to a demand differential in 1975 *(Matter of Orange & Rockland Utilities,* 15 NY PSC 1387, 1417-1418), the commission's decision to impose the summer/winter differential on demand for SC-3 customers is a second step in the process. Moreover, the selection of only those consumers of electric power who are demand metered is also rational, considering the enormous cost which a widespread demand metering would entail *(Matter of New York State Council of Retail Merchants v Public Serv Comm. of State of N. Y., supra,* p 670). Determination confirmed, and petition dismissed, without costs. Greenblott, J. P., Kane, Main, Mikoll and Herlihy, JJ., concur.